Michael Rosenthal, WSB #5-2099
Nathan Nicholas, WSB #7-5078
Hathaway & Kunz, LLP
P.O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
Fax: (307) 634-0985
mike@hkwyolaw.com
nnicholas@hkwyolaw.com

Brice M. Timmons (TN Bar #29582)
Craig Edgington (TN Bar #038205)
Melissa J. Stewart (TN Bar #40638)
*Pro Hac Vice Forthcoming*
Donati Law, PLLC
1545 Union Ave.
Memphis, TN  38104
(901) 209-5500
Fax: (901) 278-3111
brice@donatilaw.com
craig@donatilaw.com
melissa@donatilaw.com

ATTORNEYS FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **ANDREW LEWIS and ANDREW UNRUH,** )<br>)<br>)<br>)<br>PLAINTIFFS,                                )<br>)<br>v.                                                        )<br>)<br>)<br>)<br>**TRIANGLE CROSS RANCH, INC**, a )<br>Wyoming corporation; **MONKS OF THE** )<br>**MOST BLESSED VIRGIN MARY OF** )<br>**MOUNT CARMEL, d/b/a MYSTIC MONK** )<br>**COFFEE,** a Wyoming corporation, **GERALD** )<br>**E. SCHNEIDER**; **MICHAELEEN P.** )<br>**SCHNEIDER**; **DANIEL SCHNEIDER;** )<br>**MATTHEW SCHNEIDER; MARK** )<br>**SCHNEIDER; THOMAS GEORGE;** and the )<br>**SOCIETY OF OUR LADY OF THE MOST** )<br>**HOLY TRINITY**, a Texas corporation., )<br>)<br>DEFENDANTS.                         ) | **Case No.**<br><br>**COMPLAINT FOR VIOLATIONS OF**<br>**THE TRAFFICKING VICTIMS**<br>**PROTECTION REAUTHORIZATION**<br>**ACT, 18 U.S.C. § 1595**<br><br><br>**JURY TRIAL DEMANDED**<br>**PURSUANT TO FED. R.  CIV. PRO. 38(a)**<br>**& (b)** |

# COMPLAINT

**COME NOW** Plaintiffs Andrew Lewis (hereinafter "Plaintiff Lewis") and Andrew Unruh ("Plaintiff Unruh") (collectively "Plaintiffs"), by and through their designated attorneys, and hereby bring this action against Defendants Triangle Cross Ranch, LLC ("TCR"), Most Blessed Virgin Mary of Mount Carmel, d/b/a Mystic Monk Coffee, Gerald ("Jerry") Schneider, Michaeleen P. Schneider, Matthew Schneider, Mark Schneider, Thomas ("Tom") George, and Society of Our Lady of the Most Holy Trinity ("SOLT") (hereinafter collectively "Defendants"). Plaintiffs allege as follows:

## I.

## <u>NATURE OF THE ACTION</u>

1.      Human trafficking remains a shockingly prevalent practice throughout the world. It has become an epidemic in the United States.  Human trafficking victimizes vulnerable persons by forcing, defrauding, or otherwise coercing them into sexual or labor exploitation. In 2000, Congress first enacted the Trafficking Victims Protection Act to combat the exploitation of individuals, especially women and children, coerced into the sex trade, slavery, and involuntary servitude. The act takes an expansive view of trafficking ranging from violent coercion into the sex trade to the use of psychological, financial, and legal means to frighten individuals into providing labor without compensation.

2.      The "troubled teen industry" is a predatory industry that operates across the United States, especially in rural areas where the oversight of mental health facilities and residential facilities for minors is difficult or impracticable. These companies promise the parents of teens

with mental and emotional disturbances, problems with delinquency, and addiction issues respite

from the challenges of treatment and parenting their children with too-good-to-be-true promises

of cutting-edge therapies and education in a residential setting. Often these facilities are unlicensed

and unregulated or operate in legal gray areas. These companies charge desperate parents

shockingly high prices while simultaneously providing little to no actual treatment and substandard

education. The legal status of these facilities varies from state to state, and not all such facilities

are created equal. While some are well-intentioned, others are riddled with abusive conduct and

cause serious harm to their residents. The dangers posed by these companies are so serious that

the University of South Florida and the Bazelon Center for Mental Health Law founded the

Alliance for the Safe, Therapeutic, Appropriate use of Residential Treatment in response to this

growing industry that profits over $1 Billion dollars annually housing between ten and fourteen

thousand minor children a year.

3.     This is an action brought by and on behalf of human trafficking victims the troubled

teen industry.  Defendants Gerald ("Jerry") Schneider and Michaeleen P. Schneider (hereinafter

"Defendant Triangle Owners") have owned the property now operated as the Triangle Cross

Ranch, LLC. (hereinafter the "Triangle Ranch" or "TCR") since 1973.  The Triangle Ranch is

advertised as a fifty thousand (50,000) acre working ranch with over one thousand (1,000) head of

cattle which is believed to cross state lines between Wyoming and Montana. Defendant Triangle

Owners founded Mount Carmel Youth Ranch (hereinafter "Mount Carmel"), a Wyoming

nonprofit corporation, which operated at the same location to provide group home licensed

services to troubled teens. When the Mount Carmel board of directors decided to close the facility

and turn in their license in November 2012, Defendant Triangle Owners wanted to "continue the

good work that had been going on at Mount Carmel,"[1] so in December 2012, Defendant Triangle Owners applied to the Wyoming Department of Family Services (hereinafter "DFS") for a license in the name of Triangle Cross Ranch, Incorporated. That application process closed March 6, 2013, due to the Defendant Triangle Owners' failure to provide the necessary information for its completion to DFS. Defendant Triangle Owners operated the Triangle Cross Ranch for nearly two (2) years without a license as required by Wyoming law until the Wyoming Supreme Court enjoined Defendant Triangle Owners from continuing to operate the Triangle Ranch. *See Triangle Cross Ranch, Inc. v. State*, 2015 WY 47, ¶ 21, 345 P. 890, 895 (Wyo. 2015). DFS allegedly received information that Defendant Triangle Owners were operating the Triangle Ranch without the appropriate license and sent a cease-and-desist letter to Defendant Triangle Owners on July 27, 2013. Upon information and belief, Defendant Gerald Schneider informed DFS on August 27, 2013, that Defendant Triangle Owners relocated all operations related to minor children to portions of the ranch located in Montana to avoid Wyoming State certification and regulatory oversight rather than obtain the proper certifications in Wyoming. Defendant Triangle Owners re-opened the Triangle Ranch in Wyoming in 2018 under the guise of a Wyoming group home as Triangle Cross Ranch, LLC, and began continuing their pattern of systematic abuse and exploitation of delinquent teenage boys for their labor.

4.     Triangle Ranch claims to offer various kinds of therapeutic interventions for its residents. For example, "Reality Therapy" was described in the July 2013 Triangle Ranch website as "an approach to psychotherapy and counseling . . . Reality therapy is considered a cognitive behavioral approach to treatment."

---

[1]  Plaintiff avers Defendant Triangle Owners' true desire for licensing was to continue the exploitation of troubled minor teenage boys by charging their parents upwards of $6,000 a month for services that Defendant Triangle Owners had no intention of providing while forcing troubled minors to engage in forced labor.

5.      In fact, "Reality Therapy," is a real therapy method developed during the Vietnam War at the Veterans Administration hospital in Los Angeles by Dr. William Glasser. It refers to a process that is people-friendly and people-centered, focusing on teaching them how fantasy can distract people from choices that are within their control in life. It has nothing to do with giving someone a "dose of reality" or the threat of punishment. By contrast, as practiced by TCR, reality therapy is merely abuse. Defendant Gerald Schneider himself described "reality therapy" as practiced by the Triangle Ranch trial.

> Reality therapy is kind of self-explaining, really. I mean on a ranch, okay, you can't control mother nature. You can only work with her. Okay? That's reality. Okay? Now, a young man can get pretty frustrated because it's so stinkin[g] cold out. Okay?
>
> And getting dressed and being prepared and that kind of thing is a -- is a reality of the therapy. Maybe I've told him, don't you come out without your boots and your coveralls on, and then I catch him out there. Okay? Uh-huh. You turn around and go back to the house. He's going to listen to me because he's cold.

The Wyoming Supreme Court's response to this testimony was to state: "The reality is that healthy people do not pay for the privilege of stacking hay." *Triangle Cross Ranch, Inc. v. State of Wyoming*, 2015 WY 47 at ¶16. This, of course, is not actually therapy. It is merely the forced labor of children in hazardous conditions.

6.      To obtain this labor, Plaintiffs and other minor children or their parents were promised an atmosphere in which troubled teenage minors could grow physically, academically, mentally, emotionally, socially, and spiritually through therapy and treatment. Instead of the atmosphere and treatment they were promised, Plaintiffs and others similarly situated were transported to Wyoming, often through legal kidnapping at the suggestion of Defendant Triangle Owners, and forced to work in unfathomable conditions while receiving little to no formal education, behavioral treatment, or therapy. They were made to labor from early morning until late

at night, without pay, under the constant threat of physical and psychological punishment and further confinement.

7.      Defendant Triangle Owners and their recruitment agents defrauded Plaintiffs, and their parents throughout the recruitment process, inducing them into paying substantial fees for residential treatment, under promises of receiving full-time cutting-edge therapies and while maintaining proper education towards high school graduation. Defendant Triangle Owners actually forced Plaintiffs to work without pay for months. Defendant Triangle Owners and/or their agents caused Plaintiffs to believe that if they did not work for Defendants, they would suffer physical or emotional abuse and prolonged confinement.

8.      Immediately upon Plaintiffs' arrival at TCR, Defendant Triangle Owners and their agents blatantly disregarded the terms of residential or group treatment they had promised Plaintiffs, and their parents and Defendant Triangle Owners immediately began exploiting Plaintiffs' labor.

9.      Plaintiffs were immediately subjected to a jail style strip search upon arrival at TCR. Defendant Triangle Owners and/or their agents began the systematic control of Plaintiffs by the threat of further confinement unless Plaintiffs completed all chores and ranch duties, including, but not limited to, running miles of irrigation lines, picking rocks out of fields for days at a time, setting thousands of fence posts, loading massive trucks of hay daily, repairing barbed wire fencing, cleaning, cooking, tending farm animals, birthing livestock, maintaining fires throughout the night due to Defendant Triangle Owners failure to provide heat, and performing labor for the other Defendants. Laboring conditions at TCR were hazardous, causing numerous injuries and even frostbite.

10. Upon arrival at TCR, Plaintiffs were forced to watch the 2003 movie "Holes" starring Shia LaBeouf, which is a story about a wrongfully convicted boy who is sent to a brutal desert detention camp where he joins the job of digging holes for some mysterious reason without the chance of escape or freedom in sight. After watching the indoctrination video, Plaintiffs were subject to immediate forced labor after his initial jail-style strip search.

11. Plaintiffs were then subjected to or threatened with food and sleep deprivation, physical punishment, assault and battery, and emotional abuse. Plaintiffs were provided with a single pair of pants, a single shirt, two pairs of socks, and one pair of underwear. Defendant Triangle Owners created a dual tier system. Plaintiffs were housed in a rudimentary uninsulated shed without any form of heat source, but equipped with solar powered alarms to prevent them from leaving. While they were in the "Wilderness Level" they were locked in a shed without access to a latrine for extended periods and overnight and forced to urinate into jugs. Plaintiffs also simply had to defecate wherever they could.

12. Plaintiffs labored under the assumption that they could get upgraded to the Bunkhouse Level only if they abided by all physical labor standards and chores assigned to them. Successfully completing their required labor would entitle them to better food, clothing, living inside with a heat source or window A/C unit and running water. If Plaintiffs failed to abide by Defendant Triangle Owners' physical labor or chore demands they would be returned to "Wilderness Level."

13. Plaintiffs were immediately cut off from communicating with their parents about conditions at TCR. All mail incoming and outgoing was read by staff members and Plaintiffs were forced to re-write communication to their parents if they stated anything negative about TCR. Furthermore, once telephone communication was authorized a TCR staff member observed all

telephone communications and at all times had the ability to terminate the communication and often did terminate communications if Plaintiffs said anything negative about TCR.

14.     Defendant Triangle Owners' scheme was designed to make Plaintiffs and other minor children afraid, intimidated, and powerless to leave Defendant Triangle Owners' employment while all Defendants profited or knowingly benefitted, financially or through receipt of free labor, from participation in a venture which all Defendants knew or should have known was unlawful.

## II.

## SUBJECT MATTER JURISDICTION AND VENUE

15.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under the Trafficking Victims Protection Reauthorization Act (18 U.S.C. §§ 1589 *et seq.*) (hereinafter "TVPRA").

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III.

## THE PARTIES AND PERSONAL JURISDICTION

17.     Plaintiff Lewis is an individual residing in San Antonio, Texas.

18.     Plaintiff Unruh is an individual residing in Lindsay, California.

19.     Defendant Triangle Cross Ranch, Inc.[2] is a Wyoming based corporation. Its principal place of business is 423 Road 1AF, Powell, WY 82435 and may be served with process

---

[2] Triangle Cross Ranch, LLC operated without a license between 2012 – 2018. It was originally formed in 2012 as Triangle Cross Ranch, Inc. which was administratively dissolved in 2015. Gerald Schneider was at all times listed with the Wyoming Secretary of State as the Director.

through its registered agent Gerald E. Scheneider. Defendant Gerald Schneider is listed as the registered agent with the Wyoming Secretary of State.

20.    Defendant Monks of the Most Blessed Virgin Mary of Mount Carmel, d/b/a Mystic Monk Coffee (hereinafter "Mystic Monk Coffee" or "MMC"), is a Wyoming Religious Corporation which packages and sells coffee and accessories. Mystic Monk Coffee's principal place of business is 1079 Meeteetse Creek Rd., Meeteetse, WY 82433. It may be served with process through its registered agent Daniel Schneider at 31 Rd AFW, Powell, WY 82435.

21.    Defendant Gerald ("Jerry") Schneider (hereinafter "Gerald Schneider") may be served with process at 423 Road 1AF, Powell, WY 82435.

22.    Defendant Michaeleen Schneider (hereinafter "Michaeleen Schneider") is the wife of Gerald Schneider. She may be served with process at 423 Road 1AF, Powell, WY 82435.

23.    Defendant Mathew Schneider (hereinafter "Mathew Schneider") is the son of Gerald Schneider and may be served with process at either 423 Road 1AF, Powell, WY 82435 or 402 Road 8VE, Powell, WY 82435. He is the Program Director and co-founder at both Mount Carmel Youth Ranch and at TCR.

24.    Defendant Mark Schneider (hereinafter "Mark Schneider") is the son of Gerald Schneider and may be served with process at 423 Road 1AF, Powell, WY 82435. He is the Ranch Manager at TCR.

25.    Defendant Father Daniel Schneider (hereinafter "Fr. Daniel Schneider") is the son of Defendant Gerald Schneider. He is a monk and registered agent of Mystic Monk Coffee. Additionally, Fr. Daniel Schneider is the President of the Monks of the Most Blessed Virgin Mary of Mount Carmel. Fr. Daniel Schneider may be served at 31 Rd AFW, Powell, WY 82435.

26.     Defendant Thomas George (hereinafter "Thomas George" or "Tom") may be served at 391 Road 1AF, Powell, WY 82435.  Thomas George served as Executive Director of Mount Carmel Youth Ranch and TCR.  Additionally, he served as Special Projects Manager and a Family Life Coach.

27.     Defendant Society of Our Lady of the Most Holy Trinity (hereinafter "SOLT") is a Texas corporation, and a Roman Catholic Religious Institute of Men, with its principal place of business in Robstown, Texas. At all times material herein, SOLT operated ministries in and conducted activities through the Diocese of Cheyenne. It may be served with process to Father John P. Gaffney[3] at 1200 Lantthana, Corpus Christi, TX 78407.

28.     This Court has both general and specific personal jurisdiction over Defendants because each Defendant has had substantial and continuous contact with Wyoming, the grounds that the claims asserted against it arise from its transaction of business within Wyoming and on the grounds that it has committed a tortious act within Wyoming.  Furthermore, Defendants' contacts and actions were directed toward Wyoming and thus warrant the exercise of personal jurisdiction over it.

**IV.**

**FACTUAL ALLEGATIONS**

**A.     Summary of Allegations**

29.     On, or about, May 1, 1997, Defendants Gerald and Michaeleen Schneider, established Mount Carmel Youth Ranch (hereinafter "MCYR"), which had a history of problems to include, but not limited to, staff and residents suffering severe and permanent injuries, multiple

---

[3] Of note is that Thomas George was the registered Agent of SOLT between 2006 – 2010 at 402 Rd 8ve, Powell, WY 82435 according to the Wyoming Secretary of State until SOLT allowed its status to shift to inactive as it chose to operate under its Texas business filings.

failures to report serious incidents to Department of Family Services, and serious questions regarding its interlocked profit-making and nonprofit operations. Mount Carmel Youth Ranch, later rebranded as TCR, depriving its minor residents of basic human necessities. The Schneiders forced residents to conduct mechanical work[4], construction work[5], or agricultural work[6] depending on the resident's skill set and the time of year. The Schneiders forced residents to work their separate horse and cattle businesses, which raised between 250 and 1,000 calves per year.

30.     Upon information and belief, Defendant Thomas George, at times relevant to this matter, served as Executive Director of Mount Carmel Youth Ranch and TCR.  Additionally, he served as Special Projects Manager and a Family Life Coach.  Finally, he served the Catholic Church as a lay missionary member of SOLT for over twenty years.  For six of those years as the International Regional Director of SOLT, directing the activities of Priests, Religious and Lay faithful within the Society. At all times relevant to these proceedings, he coordinated, approved, directed, and facilitated the use of child labor from MCYR and TCR at SOLT and other Catholic Church facilities.

31.     At all times, Defendant Triangle Owners engaged in a recruitment scheme, whereby enticing parents of troubled minor teenagers across the United States and World to pay substantial sums of money under the guise that their children would receive cutting edge residential treatment,

---

[4] Mechanical work consisted of small engine repair, diesel mechanical work, installation of new transmissions, greasing vehicles, and general vehicle preventive maintenance and upkeep.

[5] Construction work consisted of constructing sheds and other permanent structures on the Triangle Ranch without any safety harnesses, equipment, or proper supervision.

[6] Agricultural work at TCR consisted mainly of feeding, grooming, branding, birthing, training, and overall taking care of hundreds to thousands of cattle, horses, and chickens daily.  Residents were responsible for branding, herding, inoculation, and general veterinary care of all TCR's animals to include Defendant Gerald Schneider's personal herd of cattle.

therapy, and continuing education. Defendant Triangle Owners failed to provide requisite treatment, therapy, continuing education, or even basic human necessities[7].

32.    Defendant TCR and Defendant Triangle Owners and/or their agents used or threatened food and sleep deprivation, physical punishment, emotional abuse, and humiliation daily to ensure compliance with the labor requirements.

33.    Plaintiffs felt as though they had no other choice but to continue working for Defendants because any refusal or minor infraction would result in a decrease in their privileges and additional months of forced labor, food or sleep deprivation, physical[8] or emotional punishment, or humiliation.

34.    Additionally, upon information and belief, Defendant Triangle Owners' children, Defendants Mathew Schneider and Mark Schneider, became active employees of TCR and at all times benefitted from the forced labor and human trafficking executed by Defendant Triangle Owners and TCR.

**B.    Violations of Plaintiffs' Rights.**

**i.    Plaintiff Lewis**

35.    Plaintiff Lewis was a resident at TCR for one-hundred and fourteen days from April 4, 2014, until July 27, 2014. He was fourteen (14) years old during the time he was a resident of TCR.

36.    Plaintiff Lewis was trafficked by TCR and other Defendants from Texas to Wyoming in order to secure forced and unpaid labor from Plaintiff Lewis.

---

[7]  Plaintiff and other minor children were not even provided a restroom in their sleeping cabins. Plaintiffs were punished if they attempted to use the restroom at night.

[8] The physical punishment that Plaintiffs and other minor children at TCR would suffer included, but was not limited to, actual assault and battery,

37.     Plaintiff Lewis labored from 7 am to 7 p.m. at a minimum daily with little food or water.

38.     A non-exclusive list of examples of the labor Plaintiff Lewis was forced to complete is as follows:

(a)     Running irrigation pipes for multiple hours a day;

(b)     Countless hours of installation of flooring at the Our Lady of the Valley Church;

(c)     Shoveling manure, daily;

(d)     Herding cows and bulls; Plaintiff Lewis avers that he was responsible for no less than seven (7) different brands of cattle from the town, including the whole Schneider family's and the monastery's cattle;

(e)     Bagging hundreds of bags of Sanfoin grain daily;

(f)     Operating as a human traffic cone in fields during the spraying of pesticides and other chemicals in order for staff to know where they had already sprayed;

(g)     Feeding all animals (cows, horses, and chickens), daily;

(h)     Grooming all animals, daily;

(i)     Installing and fixing miles of barbed wire;

(j)     Welding in the shop

(k)     Packaging coffee for Mystic Monk Coffee; and

(l)     Providing medical attention to all animals.

39.     Plaintiff Lewis was taught to weld with improper welding gear which resulted in nearly daily untreated flash burns. He informed the staff of these multiple painful injuries. Despite being informed of his injuries, Defendant Triangle Owners forced Plaintiff Lewis to work without proper medical treatment or protective equipment.

40.     Plaintiff Lewis's forced labor occurred at TCR, Our Lady of the Valley Church, and at the Mystic Monk's coffee shop. His use at the church was coordinated through Defendant

George, and his use at the Mystic Monk's packaging facility was coordinated through Fr. Daniel Schneider.

41.     Plaintiff Lewis was coerced into performing the labor in question by coercion within the meaning of 22 U.S.C. § 7102 through threats of serious harm to or physical restraint and through a scheme, plan, or pattern intended to cause him to believe that failure to perform an act would result in serious harm or physical restraint. Specifically, Plaintiff Lewis was threatened with, *inter alia*:

(a)     Being made to perform additional labor;

(b)     Being made to perform even more undesirable tasks like shoveling manure;

(c)     Being forced to subsist on an inadequate diet;

(d)     Being deprived of sleep;

(e)     Being deprived of basic human living needs, such as heat, air, running water, and a mattress;

(f)     Being subjected to corporal punishment such as running up and down a hill; and

(g)     Being subjected to physical, verbal, psychological, and emotional abuse[9].

**ii.     Plaintiff Unruh**

42.     Plaintiff Unruh was a resident at TCR for one-hundred and sixty-three (163) days from November 13, 2013, until April 25, 2014.

43.     Plaintiff Unruh was trafficked by TCR and other Defendants from Texas to Wyoming in order to secure forced and unpaid labor from Plaintiff Unruh.

---

[9] Plaintiff Lewis describes his experience as being treated like a slave or like a criminal. At one point an employee, Michael Morso, cocked his 1911 45 ACP after stating that every person that had ever ran away from the ranch was dead.

44.     A non-exclusive list of examples of the labor Plaintiff Unruh was forced to complete is as follows:

(a)     Countless hours of installation of flooring and Air Conditioning units at the Our Lady of the Valley Church;

(b)     Shoveling manure, daily;

(c)     Feeding all animals (cows, horses, and chickens), daily;

(d)     Herding cows and bulls;

(e)     Grooming all animals, daily;

(f)     Mechanical repairs around the ranch; including but not limited to welding;

(g)     Installing and repairing fencing;

(h)     Baling hay;

(i)     Carrying 150lb propane tanks behind staff so they could burn tumbleweeds in the canals;

(j)     Bagging coffee for Mystic Monk Coffee; and

(k)     Providing medical attention to all animals, daily.

45.     Plaintiff Unruh informed staff of multiple painful injuries. Despite being informed of his injuries, Defendant Triangle Owners forced Plaintiff Unruh to work without proper medical treatment.

46.     Plaintiff Lewis's forced labor occurred at TCR, Our Lady of the Valley Church, and at the Mystic Monk's coffee shop. His use at the church was coordinated through Defendant George, and his use at the Mystic Monk's packaging facility was coordinated through Fr. Daniel Schneider.

47.     Plaintiff Unruh was coerced into performing the labor in question by coercion within the meaning of 22 U.S.C. § 7102 through threats of serious harm to or physical restraint and through a scheme, plan, or pattern intended to cause him to believe that failure to perform an

act would result in serious harm or physical restraint. Specifically, **Plaintiff Unruh** was threatened with, *inter alia*:

(a) Not being allowed to progress to the through levels and therefore permitted to leave TCR.

(b) Being made to perform additional labor;

(c) Being subjected to further bullying and physical harm from other residents without intervention from TCR staff;

(d) Being denied medical treatment for injuries and illnesses;

(e) Being made to perform even more undesirable tasks like shoveling manure;

(f) Being deprived of sleep;

(g) Being subjected to physical, verbal, psychological, and emotional abuse.[10]

48.    Plaintiffs sustained damages as the result of the unlawful use of their labor proximately caused by Defendants' acts. These damages include two types.

49.    First, Plaintiffs are entitled to recover restitution damages under the TVPRA at least at the prevailing wage rate. Limiting TVPRA victims to the FLSA remedy would *inappropriately* afford criminals engaged in egregious practices the benefit of the lowest common-denominator minimum wage for legitimate employers. Plaintiffs are entitled to compensation for services provided at the same rates received by others who voluntarily provide those same services. *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1172 (D. Kan. 2018).

50.    Plaintiffs assert that they are entitled to $16.31[11] per hour of labor for the first forty hours per week and $24.47 per hour for every hour afterwards. Plaintiffs allege that a typical day consisted of twelve to eighteen hours of labor.

---

[10] Each staff member had the discretion to punish Plaintiff's Unruh and Lewis at his own discretion and staff changed often.

[11] Prevailing hourly wage for farm labor based on the May 2019 Department of Labor's office of Occupational and

51. Second, Plaintiffs are entitled to recover compensatory damages for emotional distress to redress noneconomic harm related to the squalid, restricted, and threatening working/living conditions imposed on TVPRA victims. Courts have awarded damages to trafficking victims subjected to forced labor in amounts ranging from $415 to $780 per day. *Id.* at 1173-74. Plaintiffs contend that they should be awarded at least $780 per day due to their especially vulnerable nature at the time of their injuries, that being minor children suffering from mental and emotional health problems, and family distress. Plaintiffs seek an award of such compensatory damages in amount to be proven at the trial.

52. Plaintiffs allege that they should also be permitted to recover any sums that TCR were paid during their residence at TCR relative to their putative "treatment" or housing. Plaintiffs are without knowledge of the precise sums in issue, but, on information and belief, these sums ranged between $6,000 and $9,000 per month per Plaintiff.

53. Plaintiffs reserve the right to amend this allegation based upon the discovery that will be conducted in this action.

## V.

## CAUSES OF ACTION

### COUNT 1 – CIVIL ACTION UNDER FEDERAL LAW FOR FORCED LABOR
### 18 U.S.C. § 1589(a)

### (AGAINST DEFENDANTS TCR, GERALD SCHNEIDER, MICHAELEEN SCHNEIDER, MATHEW SCHNEIDER, MARK SCHNEIDER, DANIEL SCHNEIDER, and TOM GEORGE)

54. Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

---

Employment Statistics.

55.     Pursuant to 18 U.S.C. § 1595(a), Plaintiffs are entitled to bring a civil action against the perpetrator (or whoever knowingly benefits financially or by receiving anything of value from participating in a venture which that persons knew or should have known engaged in an act in violation of 18 U.S.C. § 1581 *et seq*.

56.     Defendants knowingly provided or obtained the labor services of Plaintiffs by means of force, threats of force, physical restraint, or threats of physical restraint in violation of 18 U.S.C. § 1589(a).

57.     Defendants knowingly provided or obtained the labor services of Plaintiffs by means of serious harm or threats of serious harm in violation of 18 U.S.C. § 1589(a).

58.     Defendants knowingly provided or obtained the labor services of Plaintiffs by means of a scheme, plan, or pattern intended to cause services of Plaintiffs by means to believe that, if they did not perform such labor or services, they would suffer serious harm or physical restraint in violation of 18 U.S.C. § 1589(a).

59.     As a result of Defendants' conduct, Plaintiffs suffered economic damages, for which they should be compensated.

60.     As a result of Defendants' conduct, Plaintiffs suffered emotional and physical pain and suffering for which they should be compensated.

### COUNT 2 – CIVIL ACTION UNDER FEDERAL LAW FOR FORCED LABOR 18 U.S.C. § 1589 (b)

### (AGAINST ALL DEFENDANTS)

61.     Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

62.     Pursuant to 18 U.S.C. § 1595(a), Plaintiffs are entitled to bring a civil action against the perpetrator (or whoever knowingly benefits financially or by receiving anything of value from

participating in a venture which that persons knew or should have known engaged in an act in violation of 18 U.S.C. § 1581 *et seq.* and may recover reasonable attorney's fees.

63.     Defendants knowingly benefitted financially and/or received things of value from participating in a venture which had engaged in the providing or obtaining of forced labor or services, knowing or in reckless disregard of the fact that the venture had engaged in the providing or obtaining of forced labor or services in violation of 18 U.S.C. § 1589(b).

64.     As a result of Defendants' conduct, Plaintiffs suffered economic damages, for which they should be compensated.

65.     As a result of Defendants' conduct, Plaintiffs suffered emotional and physical pain and suffering for which they should be compensated.

## COUNT 3 – CIVIL ACTION UNDER FEDERAL LAW FOR TRAFFICKING 18 U.S.C. § 1590(a)

### (AGAINST ALL DEFENDANTS)

66.     Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

67.     Pursuant to 18 U.S.C. § 1595(a), Plaintiffs are entitled to bring a civil action against the perpetrator (or whoever knowingly benefits financially or by receiving anything of value from participating in a venture which that persons knew or should have known engaged in an act in violation of 18 U.S.C. § 1581 *et seq.* and may recover reasonable attorney's fees).

68.     Defendants knowingly recruited, harbored, transported, provided, and/or obtained by any means Plaintiffs for their labor or services in violation of 18 U.S.C. § 1590(a).

69.     Defendants knowingly benefitted financially and/or by receiving things of value from participating in a venture which engaged in the trafficking of forced labor by any of the means

described herein, knowing or in reckless disregard of the fact that the venture was engaged in the trafficking of forced labor or services by any of such means.

70.     As a result of Defendants' conduct, Plaintiffs suffered economic damages, for which they should be compensated.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Triangle Cross Ranch, LLC, Most Blessed Virgin Mary of Mount Carmel, d/b/a Mystic Monk Coffee, Gerald ("Jerry") Schneider, Michaeleen P. Schneider, Mathew Schneider, Mark Schneider, Daniel Schneider, Thomas George, Society of Our Lady of the Most Holy Trinity, on each Count of this Complaint and pray for the following relief:

1.      Issue service of process and serve the Defendants;

2.      Grant any reasonable request to Amend Plaintiffs' Complaint to conform to the discovery and evidence obtained in this matter;

3.      Empanel a jury to try this matter;

4.      Award Plaintiffs compensatory damages in an aggregate amount to be proven at the trial;

5.      Award Plaintiffs their reasonable attorney's fees, pursuant to 18 U.S.C. § 1595;

6.      Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

7.      Award pre-and post-judgment interest in the amount of 10% per annum; and

8.      Grant the Plaintiffs such further relief as the Court may deem just and proper.

9.

DATED this 27th day of October 2023.

Andrew Lewis and Andrew Unruh,
PLAINTIFFS

## **DEMAND FOR TRIAL BY JURY**

PURSUANT TO RULE 38 F.R.C.P., PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES TRIABLE OF RIGHT BY A JURY.

By: */s/Nathan Nicholas*
Michael Rosenthal, WSB #5-2099
Nathan Nicholas, WSB #7-5078
Hathaway & Kunz, LLP
P.O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
Fax: (307) 634-0985
mike@hkwyolaw.com
nnicholas@hkwyolaw.com

Brice M. Timmons (TN Bar #29582)
Craig Edgington (TN Bar #038205)
Melissa J. Stewart (TN Bar #40638)
*Pro Hac Vice Forthcoming*
Donati Law, PLLC
1545 Union Ave.
Memphis, TN  38104
(901) 209-5500
Fax: (901) 278-3111
craig@donatilaw.com
brice@donatilaw.com
melissa@donatilaw.com

*ATTORNEYS FOR PLAINTIFFS*