

**FILED**

**10:39 am, 7/11/24**

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

ANDREW LEWIS and ANDREW
UNRUH,

        Plaintiffs,

    vs.

MONKS OF THE MOST BLESSED
VIRGIN MARY OF MOUNT CARMEL,
d/b/a MYSTIC MONK COFFEE, a
Wyoming corporation, DANIEL
SCHNEIDER; and the SOCIETY OF
OUR LADY OF THE MOST HOLY
TRINITY, a Texas corporation,


        Defendants.

Case No. 23-CV-202-KHR

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS**

---

Before the Court are two motions to dismiss. [ECF No.'s 77 & 79]. Plaintiffs bring

claims under 18 U.S.C. §§ 1595, 1589, and 1590 of the Trafficking Victims Protection

Reauthorization Act (TVPRA). Defendants Mystic Monk Coffee (MMC), Father Daniel

Schneider (collectively "the MMC Defendants"), and Society of our Lady of the Most

Holy Trinity (SOLT) each move to dismiss on the grounds that Plaintiffs fail to state a

claim under the TVPRA. Triangle Cross Ranch, LLC and its individual owners and

employees (collectively the TCR Defendants) were named as defendants in both the original and Amended Complaints but have settled with Plaintiffs. The Court, being fully advised, grants in part and denies in part MMC's Motion to Dismiss and grants SOLT's Motion to Dismiss in its entirety.

**BACKGROUND**

Gerald Schneider owns Triangle Cross Ranch, a 50,000-acre ranch encompassing parts of Northwest Wyoming and Montana. Since 1997, the Schneiders have operated a program (previously known as Mount Carmel Youth Ranch (MCYR), currently known as Triangle Cross Ranch (TCR)) that they advertise as providing therapy services to troubled boys. Participating children perform chores around the ranch, including caring for livestock, shoveling manure, and maintaining equipment and buildings. *Id.* TCR conceded that "if a resident…refused to perform the chores, he might be required to perform additional chores or otherwise be subject to consequences." *Id.*

Plaintiffs Andrew Lewis and Andrew Unruh allegedly stayed at TCR for several months in 2013 and 2014. They allege that what the Ranch advertised as innovative therapy techniques were in fact coercive labor practices. Plaintiffs describe a scheme in which TCR "entic[ed] parents of troubled minor teenagers…to pay substantial sums of money under the guise that their children would receive cutting edge" therapy and education, while financially profiting from the labor that those children performed. [ECF No. 61, at 12]. Plaintiffs describe working long hours in extreme weather, performing physically grueling tasks. *Id.* They claim that a resident's refusal to participate in the

2

work would lead to physical and psychological punishment, including food and sleep deprivation, assault, and loss of living standards. [ECF No. 61, at 12, 18].

MMC is a nonprofit corporation that packages and sells coffee, and is a separate entity from TCR, LLC. *Id.* at 7. Defendant Fr. Daniel Schneider is the president and religious leader of MMC and the son of Gerald Schneider. *Id.* at 8. His precise dates of employment at either organization are unclear, except that he is alleged to have been the president and registered agent of Mystic Monk Coffee from 2014-2015. *Id.* at 17. Plaintiffs allege that while they were residents of TCR, they were sent to perform labor at MMC. *Id.* at 14. Plaintiffs further allege that Fr. Schneider coordinated these activities with TCR. *Id.* at 17. Plaintiffs allege that Fr. Schneider participated in MCYR/TCR's continuing forced labor scheme before he became a monk, and therefore has knowledge of the coercive nature of the labor allegedly used by both TCR and MMC. *Id.* Defendants deny these allegations and move to dismiss on the grounds that the complaint fails to plead facts that would show that Fr. Daniel Schneider knew of or participated in any misconduct that would violate the TVPRA. Plaintiffs respond that a negligence standard, not knowledge, applies to all their claims under 18 U.S.C. § 1595. They argue that they have met this standard.

The Society of our Lady of the Most Holy Trinity (SOLT) is a Texas corporation that operates ministries in Wyoming. *Id.* at 9. Plaintiffs allege that Defendant Thomas George worked in various capacities for both TCR and SOLT. *Id.* at 23. His precise dates of employment at either organization are unclear. Plaintiffs allege that SOLT, through Thomas George, coordinated with TCR to obtain labor from minor TCR residents. SOLT

moves to dismiss on the grounds that Plaintiffs failed to plead facts showing that SOLT knew or should have known of the alleged abuses at TCR.

## RELEVANT LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may respond to a complaint with a defense for the "failure to state a claim upon which relief can be granted." In reviewing a 12(b)(6) motion, a court should "accept as true all well-pleaded factual allegations in a complaint in a light most favorable to the plaintiff." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equal probability. *Id.* A plaintiff must show more than a sheer possibility that the defendant acted unlawfully, passing the line from speculation or conceivability to plausibility. *Id.*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Labels, legal conclusions, and formulaic recitations of the

elements are insufficient to survive a motion to dismiss. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**DISCUSSION**

Count One of Plaintiffs' First Amended Complaint asserts perpetrator liability under 18 U.S.C. §§ 1589 and 1595 against all TCR Defendants. Count One need only be discussed with respect to Fr. Schneider, as the other TCR Defendants have since settled. Plaintiffs assert Counts Two and Three against both MMC and SOLT.[1] Count Two is a claim for beneficiary liability under 18 U.S.C. § 1595 for forced labor under 18 U.S.C. § 1589. Count Three appears to be a claim for both perpetrator and beneficiary liability brought pursuant to §§ 1595 and 1590(a).[2]

The court takes each of these arguments in turn. For the reasons discussed below, the Court grants the Motion to Dismiss as to the perpetrator liability claims against MMC

---

[1] Because the primary TCR Defendants are no longer parties and the beneficiary liability claims are derivative of their direct liability, the beneficiary liability claims appear to be standalone. Courts differ as to whether § 1595 can exist as a standalone claim. *See H.H. v. G6 Hospitality, LLC*, No. 19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019) (holding that § 1595 could be brought independently). *Cf. Paguirigan v. Prompt Nursing Emp. Agency, LLC*, 286 F.Supp.3d 430, 436 n.4 (E.D.N.Y. 2017) (holding that § 1595 merely provides a civil cause of action for a substantive violation of the TVPRA and could not be a standalone claim). There is, consequently, a lack of clarity as to what a plaintiff must plead at the motion to dismiss phase as to the elements of the "predicate" offense where no parties are alleged to have perpetrator liability under the TVPRA. In *Bistline v. Parker*, the Tenth Circuit wrote that pleading facts "sufficient to support a claim against a primary offender" is "a necessary element for venture liability." 918 F.3d 849, 871 (10th Cir. 2019). *Bistline* only addressed venture liability under the preexisting § 1589(b) and did not treat beneficiary liability under § 1595 as a separate source of liability. *Id.* at 870. Since *Bistline*, however, district courts in the Tenth Circuit have allowed standalone § 1595 claims to proceed, with one holding that a plaintiff need not "plausibly allege each element" of the predicate violation. *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-619, 2021 WL 5579117, at *4 (D. Colo. Nov. 30, 2021). *See J.L. v. Best Western Int'l, Inc.*, 521 F.Supp.3d 1048 (D. Colo. 2021). *See also Doe (S.C.) v. Sheraton, LLC*, No. 23-CV-451, 2024 WL 1329422, at *2 (D. N.M. Mar. 28, 2024). In light of this uncertainty, this Court follows its peer district courts in allowing Plaintiffs to bring their standalone claim under § 1595 and performing its analysis for beneficiary liability under that provision. For the sake of thoroughness, the Court will discuss the sufficiency of the predicate claims under § 1589 against the TCR Defendants, although they are no longer a party to this suit.

[2] The Court notes that the Amended Complaint generally fails to distinguish between perpetrator and beneficiary liability under § 1595, making it difficult to discern which violations are being charged to each defendant. This lack of clarification, combined with the Plaintiffs' use of the disfavored practice of incorporating by reference all preceding paragraphs in each count, places this Complaint dangerously close to a shotgun pleading. *See Jacobs v. Credit Suisse First Boston*, No. 11–CV-42, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011).

Defendants and denies it as to the beneficiary claims. The Court grants the Motion to Dismiss as to all claims against SOLT.

## I.        Plaintiffs' claims against MMC and Daniel Schneider

Section 1595 permits a victim to sue both a perpetrator directly for violations of the TVPRA ("perpetrator liability") and to sue an entity participating in a venture that violated the TVPRA while benefitting from such violations ("beneficiary liability"). 18 U.S.C. § 1595. Count One claims perpetrator liability on the part of Fr. Schneider. Count Two appears to be a claim that the MMC Defendants are liable under a beneficiary theory for their participation in a venture with TCR.[3] The Court first analyzes whether Fr. Schneider can be held liable as a perpetrator under § 1589(a). The Court then briefly assesses the claims against TCR under § 1589(a) for purposes of predicate liability and, finding them plausible, moves to an analysis of the beneficiary liability claims against the MMC Defendants. Finally, the Court considers the trafficking claims against MMC defendants under § 1590.

Count One: Perpetrator Liability against Daniel Schneider under 18 U.S.C. § 1589(a)

Plaintiffs originally brought a claim for perpetrator liability under § 1589(a) via § 1595 against TCR and its owners and employees. The only defendant remaining from that group is Fr. Daniel Schneider. The Court dismisses Count One against Fr. Schneider.

---

[3] This arrangement of provisions is confusing, in that it seems Plaintiffs could have brought this particular claim under either a theory of beneficiary liability under § 1595 for an underlying violation of § 1589(a) or as perpetrator liability under § 1595 for a violation § 1589(b). §1589(b) is itself a venture liability provision that requires a showing that (a) was violated by a "primary offender." *Bistline*, 918 F.3d, at 871. It is not entirely clear to the Court which avenue Plaintiffs pursue. The Court believes that the analysis under either approach is substantively similar. The Court chooses to analyze Plaintiffs' claim under the former approach, as it is the more coherent of the two. The Court also performs an analysis of the plausibility of the predicate claims against TCR that would apply either under § 1589(b) or the differing interpretations of § 1595.

Plaintiffs fail to state a claim for perpetrator liability under § 1589(a) against Fr. Schneider. § 1589(a) holds liable:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
    (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
    (2) by means of serious harm or threats of serious harm to that person or another person;
    (3) by means of the abuse or threatened abuse of law or legal process; or
    (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a). While Plaintiffs allege numerous facts that tend to create liability against TCR and its current owners, the record against Fr. Schneider as to this Count is sparse. Plaintiffs allege that Fr. Schneider grew up on the ranch before he became a monk and that he witnessed the use of coerced labor during that time. [ECF No. 61, at 17]. Plaintiffs allege that Fr. Schneider "actively participated in the operation of MCYR under the tutelage of his father before becoming a monk." [ECF No. 61, at 15]. This lone conclusory statement is insufficient to establish perpetrator liability under the TVPRA. There are no factual allegations in the Amended Complaint that would tend to show that Fr. Schneider himself violated § 1589(a) as to these Plaintiffs in his capacity as President of MMC. Furthermore, there are no allegations whatsoever that would explain how he could be held vicariously liable for the violations of the other TCR Defendants as to these Plaintiffs, who allegedly resided at TCR many years after Fr. Schneider left. Therefore,

the Amended Complaint fails to state a claim under 1589(a) against Fr. Schneider. Count One is dismissed.

Count Two: Beneficiary Liability under 18 U.S.C. § 1595(a) and 18 U.S.C. § 1589 for Forced Labor

Plaintiffs also bring a claim against the MMC Defendants under the beneficiary liability provision of § 1595(a), which provides a private cause of action for a victim suing a defendant who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). The Court briefly addresses the plausibility of the predicate claims against the TCR Defendants as a precursor to its analysis of beneficiary liability. TCR and its owners and employees were alleged to have owned and operated a program for troubled boys that engaged in violations of the forced labor and trafficking provisions of the TVPRA under § 1589 and § 1590, respectively. Specifically, Plaintiffs alleged that TCR advertised itself as a therapy program but once residents arrived, they were forced to perform labor for long hours under harsh conditions under threat of punishment, including mechanical, agricultural, and construction work. [ECF. No. 61, at 10]. Refusal to participate in labor was allegedly met with additional labor, less food and sleep, and being deprived of basic living necessities. *Id.* at 16.

Plaintiffs have plausibly alleged that TCR defendants violated § 1589(a). "The TVPRA was enacted to encompass more subtle forms of psychological abuse and nonviolent coercion than those previously required to hold perpetrators accountable."

8

*Bistline*, 918 F.3d at 871. The statute defines "serious harm" as used in (a)(2) as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform labor…to avoid incurring that harm." 18 U.S.C. § 1589(c)(2). The Court finds that Plaintiffs have alleged facts that render it plausible that TCR Defendants violated this section. They allege that while they were residents of TCR they were forced to perform various work tasks while being threatened with denial of medical treatment, sleep deprivation, and physical and psychological punishment by staff. [ECF No. 61, at 18]. Taken as true, these facts plausibly establish that TCR Defendants could be held liable for forced labor under § 1589(a).

With predicate liability plausibly established, the Court considers the beneficiary liability of MMC Defendants. In order to avoid dismissal, "plaintiffs must plausibly allege that [plaintiffs] provided labor or services that were procured by a method that is prohibited under the TVPRA, and that [defendants] knowingly benefited from participating in this venture." *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). Under § 1595(a), Plaintiffs must plead facts that plausibly show that the defendant had actual knowledge as to the benefit received and was negligent as to the illegality of the labor used by venture. *J.L. v. Best Western Int'l, Inc.*, 521 F. Supp.3d 1048, 1076 (D. Colo. 2021). Plaintiff's Amended Complaint meets this standard.

Plaintiffs plausibly allege that MMC defendants participated in a venture that violated the TVPRA. A venture is defined in the statute as "any group of two or more

individuals associated in fact, whether or not a legal entity." *Id.* at 873 (quotations omitted) (quoting 18 U.S.C. § 1591(e)(6)). Participation in the venture does not require an overt act as to trafficking or forced labor. *Doe (S.C.) v. Sheraton, LLC*, No. 23-CV-451, 2024 WL 1329422, at *4 (D. N.M. Mar. 28, 2024). The plaintiff "must allege at least a showing of a continuous business relationship between the trafficker" and the entity they seek to hold vicariously liable. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959, 970 (S.D. Ohio 2019). Plaintiff Lewis alleges that he worked at MMC's properties for multiple days per week, and that his labor there was coordinated by Fr. Schneider. [ECF No. 61, at 14]. Plaintiffs' allegations that Fr. Schneider repeatedly worked with TCR to obtain minor workers for his company's activities would constitute a continuous business relationship sufficient to establish participation in a venture.

Plaintiffs plausibly allege that MMC defendants knowingly benefited from the venture. This element "merely requires that Defendant knowingly receive a financial benefit" and does not require actual knowledge as to the illegality of the venture. *H.H. v. G6 Hosp., LLC*, No. 19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019) (finding that a hotel franchisor's receipt of rent royalties was sufficient to establish a knowing benefit). In addition to financial benefit, a defendant's conduct can also fall within the range of the statute "by receiving anything of value" at all from the venture. 18 U.S.C. § 1595(a). Plaintiffs claim that they spent time working on MMC's property, performing tasks like packaging coffee to be sold as part of MMC's business. [ECF No. 61, at 14, 17]. Plaintiffs also allege that their labor there was coordinated through Fr. Schneider, so it is safe to assume that MMC was aware of the benefit it was receiving. *Id.*

at 17. This Court finds that Plaintiffs have plausibly alleged the knowing benefit requirement.

Plaintiffs plausibly allege that the MMC defendants knew or should have known that TCR was engaging in violations of § 1598(a). Plaintiffs allege several new facts in their Amended Complaint to meet this standard. According to Plaintiffs, Fr. Daniel Schneider was raised on Triangle Cross Ranch by his parents Gerald and Michaeleen Schneider. [ECF No. 61, at 14]. During that time, he is alleged to have witnessed the scheme of forced labor that began in 1997 and continued until at least 2014. *Id.* at 15. This includes allegations that he witnessed minor residents of the ranch experience punishment for refusal to work. *Id.* at 17. While he was President of MMC, he is alleged to have coordinated with TCR to obtain labor from Plaintiffs while they resided at Triangle Cross Ranch. *Id.* at 18. This labor is alleged to have included packaging coffee, working with livestock, and repairing structures on the property. *Id* at 17. Plaintiffs describe working at MMC up to five days per week and sometimes over ten hours per day. *Id.* at 17.

This is unlike the allegations in cases such as *J.L. v. Best Western Int'l, Inc.*, where the plaintiff did not allege any facts whatsoever that would permit the inference that a hotel company knew or should have known that there were violations of the TVPRA occurring on their property. 521 F.Supp.3d 1048, 1072 (D. Colo. 2021) (allegations pertaining only to things such as plaintiff's behavior and appearance were insufficient to create the inference that hotel managers knew or should have known plaintiff was being trafficked). Here, Plaintiffs allege that Fr. Schneider took an active role in the facilitation

11

of their forced labor. [ECF No. 61, at 22]. They further claim that he had direct knowledge of TCR/MCYR's alleged illegal activities via his early participation in their labor scheme. *Id.* Those allegations would tend to establish that Fr. Schneider had some firsthand knowledge of the labor scheme at the ranch, and that he should have known that minor workers from the ranch were working at MMC as a product of that scheme.

The above factual allegations, taken as true, are sufficient to establish the plausibility of Plaintiffs' beneficiary claim for forced labor against the MMC Defendants. If Fr. Schneider was aware of TCR's forced labor scheme while he was growing up and that scheme remained unchanged, it is plausible that he knew or should have known that the minor children sent from TCR were working there, and at MMC, due to coercion. Plaintiffs' allegations that Fr. Schneider serves as President of MMC also render it plausible that his negligence could be imputed to MMC. While many of these allegations are general in nature, they consist of greater factual substance than those in the complaint originally dismissed by this court. [*See* ECF No. 56, at 13]. The Court denies MMC's motion to dismiss as to Count Two.

Count Three: Perpetrator and Beneficiary Liability under 18 U.S.C. § 1595 and 18 U.S.C. § 1590(a) for Trafficking

Plaintiffs also bring a claim for trafficking under § 1590(a), which holds liable "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590(a).  It is again unclear if Plaintiffs wish to sue the MMC Defendants as perpetrators or as beneficiaries. On its face, the text of § 1590(a) could apply to MMC Defendants, as the

statute imposes direct liability for both providing and obtaining coerced labor. The Court addresses both possible claims.

While liability for trafficking is distinct from liability for forced labor under the TVPRA, § 1590(a) requires that labor be obtained "in violation of" another provisions, meaning that a violation of § 1589(a) can create a violation of § 1590(a). *See Adia v. Grandeur Mgmt, Inc.*, 933 F.3d 89, 94 (2nd Cir. 2019) ("[I]f a defendant violates section 1589, he also violates section 1590 if he recruited the person to perform forced labor."). A corollary of that requirement is that for a plaintiff to plead a claim for trafficking with respect to forced labor, they must show that the defendant themselves took some action that could amount to coercing the plaintiffs. *See Ngono v. Owono*, No. 23-339, 2024 WL 911797, at *2 (2nd Cir. 2024) (holding that plaintiff failed to state a claim for trafficking where they failed to "allege specific threats" from defendant that would constitute "a separate act of recruitment under § 1590(a)."). Therefore, to survive the Motion to Dismiss with respect to their claims for perpetrator liability for trafficking, Plaintiffs must plead facts that could plausibly show that MMC Defendants themselves took some action of coercion against them in the obtaining of their labor.

Plaintiffs do not meet the plausibility standard for perpetrator liability as to § 1590(a). Plaintiffs simply refer to all Defendants in an undifferentiated manner and, again, incorporate by reference all preceding paragraphs into this Count. The allegations concerning Fr. Schneider's time at MCYR before he became a monk tend to show that he had actual or constructive knowledge of the coerced labor occurring at TCR, but they do little to show that any MMC Defendant themselves threatened or coerced Plaintiffs in a

13

manner that could constitute "a separate act of recruitment." *Ngono*, 2024 WL 911797, at
*2. A general statement that Fr. Schneider coordinated with TCR to obtain Plaintiffs
labor is insufficient. Plaintiffs plead no facts whatsoever that would indicate that MMC
Defendants threatened them or coerced them. The Amended Complaint therefore fails to
state a claim for perpetrator liability under the trafficking provisions of the TVPRA.

As discussed above, Plaintiffs also claim beneficiary liability for trafficking under
§ 1595 against MMC Defendants. Here, Plaintiffs need to sufficiently plead that MMC
Defendants participated in and benefitted from a venture in which Plaintiffs were
trafficked. The analysis here will be substantially similar to the beneficiary liability
analysis for Count Two. Plaintiffs' allegations that TCR coerced the Plaintiffs to perform
labor and transported them to provide their labor elsewhere plausibly establish their
predicate violation of § 1590(a).

As discussed above, Plaintiffs have plausibly alleged that MMC Defendants
participated in a venture that violated the TVPRA.

As further discussed, Plaintiffs have plausibly alleged that MMC Defendants
knowingly benefitted from a venture that violated the TVPRA. Plaintiffs alleged labor
packaging coffee and performing other chores benefitted MMC's business operations.

Plaintiffs have plausibly alleged that MMC Defendants knew or should have
known that the labor at TCR and at their properties violated the trafficking provisions of
the TVPRA. They allege that Fr. Schneider witnessed TCR/MCYR's early operations,
which allegedly included trafficking, and that those operations remained unchanged
throughout Fr. Schneider's time at MMC.

The Court holds that Plaintiffs state a plausible claim for beneficiary liability under § 1590(a) and § 1595.

## II.   Plaintiffs' claims against SOLT

Plaintiffs also bring Counts Two and Three. However, the factual allegations as to the involvement of SOLT are scant, and both Counts can be addressed together. Plaintiffs' allegations against SOLT are as follows.

1. Thomas George served as Executive Director of MCYR and TCR at all times relevant to this matter.

2. Thomas George worked for SOLT for over twenty years, working as both a missionary and as International Regional Director. At all times relevant to this proceeding, Mr. George coordinated, approved, directed, and facilitated the use of child labor at SOLT and other Catholic Church facilities.

3. Plaintiffs allege that they were forced to work at Our Lady of the Valley Church, installing flooring and air conditioning units.

[ECF No. 61, at 12, 14, 16]. Plaintiffs have not plausibly alleged that SOLT should be held liable under any relevant section of the TVPRA. The Court has included the labor performed at Our Lady of the Valley Church as an allegation against SOLT, but Plaintiffs nowhere directly allege that SOLT owns or operates Our Lady of the Valley Church. The Court is left to draw the inference that the Church is part of SOLT or falls into the category of "other Catholic Church facilities" that SOLT allegedly operates. Or, even further still, that TCR flew Plaintiffs to SOLT's headquarters in Houston.

Additionally, with the exception of his mostly undefined dates of employment at both organizations, Plaintiffs allege no facts to explain how Mr. George and, by extension, SOLT, knew or should have known of the underlying TVPRA violations allegedly committed by TCR. None of these allegations, taken as true, render it plausible that SOLT violated §§ 1595, 1590, or 1589. Also left unaddressed by any of the parties is the fact that Mr. George is no longer a party to this lawsuit, with claims against him having been settled along with the other TCR Defendants. *See* [ECF No. 94].

Plaintiffs fail to state a claim against SOLT for both perpetrator and beneficiary liability under all relevant sections of the TVPRA.

## CONCLUSION

The Court grants MMC Defendants' Motion to Dismiss as to the perpetrator liability claims for forced labor and trafficking and denies it as to the beneficiary liability claims under those provisions. The Court grants SOLT's Motion to Dismiss in its entirety. The Amended Complaint simply does not contain factual content such that SOLT could be held liable under any relevant theory. However, it is not obvious that Plaintiffs cannot prevail on these claims or that further amendment would be futile, so the Court dismisses these claims without prejudice.

NOW, THEREFORE, IT IS ORDERED that the perpetrator liability claims contained within Counts One and Three against MMC Defendants be DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED THAT all claims against the Society of Our Lady of the Holy Trinity be DISMISSED WITHOUT PREJUDICE.

Dated this 11th day of July, 2024.

Kelly H. Rankin
United States District Judge